| | |
|---|---|
| DISTRICT COURT, EAGLE COUNTY, COLORADO<br>Court Address: 855 Chambers Avenue, Eagle, CO 81631 | DATE FILED: September 1, 2023 5:40 PM<br>FILING ID: 1DB242A21A549<br>CASE NUMBER: 2023CV30146 |
| **Plaintiff**: SUNRIDGE AT AVON II CONDOMINIUM ASSOCIATION<br>v.<br>**Defendant**: AMGUARD INSURANCE COMPANY, A MEMBER OF BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES, a Pennsylvania Corporation. | ▲ COURT USE ONLY ▲ |
| *Attorney for Plaintiff*:<br>Patrick M. Sweet, Reg. No. 51130<br>Burg Simpson Eldredge Hersh & Jardine, P.C.<br>40 Inverness Drive East<br>Englewood, CO 80112<br>Phone: 303-792-5595<br>Email: psweet@burgsimpson.com | Case No.:<br>Div.: |

## COMPLAINT AND JURY DEMAND

Plaintiff, Sunridge at Avon II Condominium Association, by and through its counsel, Burg Simpson Eldredge Hersh & Jardine, P.C., submits its Complaint and Jury Demand against Defendant AmGUARD Insurance Company, a Member of the Berkshire Hathaway Guard Insurance Companies, and sates as follows:

### I. PARTIES

1. Sunridge at Avon II Condominium Association ("Sunridge" or "Plaintiff") is a nonprofit corporation organized under the laws of the State of Colorado.

2. AmGUARD Insurance Company ("AmGUARD"), a Member of Berkshire Hathaway Guard Insurance Companies ("Berkshire Hathaway") (collectively, "Defendant"), is a Pennsylvania corporation authorized to sell insurance in the State of Colorado. Defendant may be served via the CT Corporation System, 7700 E. Arapahoe Road, Ste. 220, Centennial, CO 80112.

### II. JURISDICTION AND VENUE

3. The Constitution of the State of Colorado provides that the District Court shall be the trial Court of record with general jurisdiction and shall have original jurisdiction over all civil, probate and criminal matters except as otherwise provided by statute and shall have jurisdiction as may be prescribed by law under the Constitution of the State of Colorado, Article VI, Section IX. Personal jurisdiction is proper pursuant to C.R.S. § 13-1-124. Defendant conducts business in Colorado, contracted with Plaintiff to provide insurance in Colorado, and has committed tortious acts in Colorado.

4. Venue is proper in the Eagle County District Court pursuant to C.R.C.P. 98(c)(1) because Defendant conducts business in Eagle County and the facts and circumstances giving rise to this action occurred in Eagle County.

### III. GENERAL ALLEGATIONS

**A. A fire devastates Sunridge.**

5. On April 11, 2021, Sunridge suffered a structure fire that caused significant damage to two of its buildings.

6. The fire began on the second-floor deck of unit 201 in building G and spread to the adjacent building H, causing damage to 17 condominium units.

7. The fire displaced more than 30 people, forcing them to live in temporary housing at the Comfort Inn and Suites in Avon, Colorado.

8. The Eagle River Fire Protection District reported there was property damage of $1.5 million and damage to contents of an additional $250,000.

**B. Sunridge is insured with AmGUARD.**

9. At the time of the fire, Sunridge was insured under a policy of insurance with AmGUARD Insurance Company, policy number SUBP147246.

10. The effective dates of the policy were October 1, 2020, through October 1, 2021.

11. Sunridge paid a premium of $50,691.00 for the coverages afforded under the policy.

12. Building G had replacement cost coverage with a building coverage limit of $1,844,854.00.

13. Building H had replacement cost coverage with a building coverage limit of $1,844,854.00.

14. Sunridge's policy with AmGUARD was an all-risk policy, meaning it covered all risks of direct physical loss unless expressly excluded or limited under the policy.

15. The April 11, 2021, fire was a covered cause of loss.

**C. Sunridge submits a claim to AmGUARD, who immediately drops the ball.**

16. Sunridge notified its insurance producer, who then immediately notified AmGUARD, the day after the fire.

17. AmGUARD hired Ted Miller of Raphael & Associates to be the field adjuster for the loss.

18. Ted Miller contacted Sunridge for the first time on Wednesday, April 14, 2021.

19. Ted Miller inspected the site for the first time exactly one week after the Fire (on April 18, 2021).

20. Ted Miller completed his second site inspection on April 26, 2021.

21. Starting 10 days after the fire, Sunridge began inquiring when AmGUARD would begin issuing payments because emergency board-up, dry-out and other mitigation work was already necessary and underway.

22. Sunridge requested an advance of $100,000.00 to Raphael & Associates, and Ted Miller informed Sunridge he requested an advance of at least double that amount from AmGUARD.

2

23. On May 25, AmGUARD informed Sunridge it would only advance $50,000.00 less the association's $10,000.00 deductible but offered no explanation as to why AmGUARD would only advance that amount or why it took the highly unusual step of applying the deductible to the advance.

24. AmGUARD's $40,000.00 check arrived on June 4, 2021, nearly 8 weeks after the fire.

25. Despite AmGUARD's field adjuster having inspected the properties twice in April, AmGUARD failed to produce any estimates in April that would allow Sunridge to have any idea as to whether AmGUARD was going to pay the repair costs.

26. Despite AmGUARD's field adjuster having inspected the properties twice in April, AmGUARD failed to produce any estimates in May that would allow Sunridge to have any idea as to whether AmGUARD was going to pay the repair costs.

27. Seeing zero progress from AmGUARD, Sunridge took it upon itself to hire a private estimator to produce a scope of repair and estimate, Gregory Isham of Inside Estimator, LLC.

28. Mr. Isham produced two preliminary estimates dated May 28, 2021: (1) for clean-up of $61,588.23; and (2) for repair and reconstruction of $872,560.93.

29. Also on May 28, 2021, Sunridge's chosen general contractor (Edwin Rios of AR Rios Construction) sent Mr. Isham's estimates to AmGUARD's field adjuster, Ted Miller, along with the Fire Marshall's report (stating the fire was accidental, and that the extent of the losses were $1.5 million to the structures and $250,000 for contents, for a total of $1.75 million), the Avon Police Department report, the asbestos testing report, an initial letter from Sunridge's structural engineer, and pictures of the Girard roof replacement samples that are the closest match.

30. After he reviewed the estimates, Ted Miller called Sunridge's representative, Steve Lay, and indicated his estimate totaled only $175,000. Neither Ted Miller nor AmGUARD ever provided that estimate to Sunridge.

31. Despite it being undisputed that the value of the loss was *at least* the $175,000.00 figure Ted Miller estimated, AmGUARD failed to issue a payment of those undisputed covered benefits.

32. Sunridge encouraged Ted Miller to return for another inspection to address his low estimate, but Ted Miller never returned to the property.

33. On June 8, 2021, Sunridge received an updated estimate from Gregory Isham of Inside Estimator, LLC of the cost to repair, which lowered the replacement cost value to $864,434.72, and also provided an estimate of the actual cash value for the repairs of $529,450.48.

34. On June 11, 2021, AmGUARD reassigned the claim to Jason Arche, a large-loss specialist for AmGUARD.

35. Mr. Arche advised he would be arranging for a different field adjuster to make another site visit. On June 13, 2021, Bryan Jeffords contacted Sunridge and indicated AmGUARD hired him as the new field adjuster and that he would be inspecting the properties. Mr. Jeffords also asked Mr. Lay to forward the asbestos invoice so he could get it paid "right away."

3

36. On June 13, 2021, Sunridge sent to Mr. Arche and Mr. Jeffords the files from Sunridge's estimator; a May 19, 2021, engineering letter from Albert N. Ewing of Ewing Engineering; the asbestos report and invoice; the Fire Marshall's report; and the Avon Police Department's report, along with an email and accompanying pictures from SteamMaster dated June 7, 2021, which addressed the scope of repairs needed for smoke odor removal.

37. As of June 13, 2021, AmGUARD had in hand from Sunridge mitigation costs totaling more than $61,588.23 and a repair and reconstruction cost estimate of more than $864,434.72 (with an actual cash value estimate of more than $500,000), for a total of $926,022.95.

38. As of two months after the fire, AmGUARD had paid only the $40,000 advance and completely failed to disclose to Sunridge any estimates of its own.

39. Mr. Jeffords visited the site (AmGUARD's third site visit) on June 15, 2021. Also present were Mario with A&M Group, Raj with SteamMaster, Mr. Rios (Sunridge's general contractor), and Mr. Lay.

40. Mr. Jeffords stated he would have his estimate completed by June 18, 2021.

41. When Sunridge had still not yet been provided with the promised estimate by June 29, 2021, Sunridge called Mr. Jeffords to ask about his estimate and learned Mr. Jeffords had actually submitted it to AmGUARD on June 18, 2021.

42. Finally, on July 2, 2021, nearly three months after the fire, AmGUARD provided Sunridge for the first time an estimate of the loss.

43. AmGUARD's estimate was for only $350,804.80 on a replacement cost basis, and $272,602.55 on an actual cash value basis.

44. It was, and remains, an utter mystery as to how AmGUARD ever believed that sum was sufficient to repair the property.

45. On August 14, 2021, AmGUARD moved on to its third field adjuster, Kevin Miller of Crawford & Company.

46. Kevin Miller met with Sunridge at the end of August and produced a new estimate in September with a replacement cost value of $734,504.09 and an actual cash value of $669,600.22.

47. In two months' time, Mr. Miller had already determined AmGUARD's initial estimate needed to at least be doubled.

48. AmGUARD issued a payment of approximately $400,000 based on Kevin Miller's estimate.

49. Sunridge could not sit around and wait for AmGUARD to decide to properly adjust its claim.

50. Sunridge needed to begin work that would permit unit owners or their tenants to reenter their homes and resume their lives.

51. Accordingly, Sunridge was forced to move forward with AR Rios Construction to repair the fire damage before receiving AmGUARD's September estimate.

**D. AmGUARD agrees to AR Rios proceeding with construction on a time and materials basis and yet further delays payments of covered benefits.**

52. Sunridge and AmGUARD discussed a global settlement of the claim in January of 2022.

53. As part of those discussions, AR Rios put together a ballpark estimate of $1.6 to $1.7 million.

54. AmGUARD would not agree to settle the claim at AR Rios' estimated figures but did agreed that AR Rios would proceed on a time and materials basis but with a monthly review of construction progress and updated costs as compared to AmGUARD's working estimate.

55. AmGUARD's piecemeal adjustment of the claim resulted in construction delays.

56. Andrew Antczak of Crawford Company produced an updated Statement of Loss on behalf of AmGUARD on May 5, 2022.

57. That Statement of Loss reflected a replacement cost value of $1,157,428.81 and a total covered benefit including mitigation and code upgrades of $1,265,137.09.

58. That statement also indicated a net payment due to Sunridge of $291,176.68.

59. Unfortunately, as was pointed out to AmGUARD, that revised statement of loss was still inadequate.

60. AmGUARD's delays and failures to properly adjust the claim led to the condominium unit owners whose units remained unfinished as the association entered Vail Valley's summer high season for the second time since the fire to lose patience and threaten legal action against Sunridge.

61. Sunridge was desperate to move the claim forward to conclusion as quickly as possible. To facilitate that, Sunridge requested AR Rios Construction prepare a final estimate for the completion of all remaining work in Building G and provided that document, along with the supporting documentation, to AmGUARD on May 25, 2022. That estimate was in the amount of $686,170.39.

62. AR Rios Construction's $686,170.39 number combined with the $943,597.26 AmGUARD already paid totaled a full cost for both buildings of $1,629,767.65. Unsurprisingly, as AR Rios has been performing construction in the Vail Valley for quite some time, that total was within the range AR Rios ballparked in January of 2022.

**E. AmGUARD forced its insured to specially assess unit owners to pay for construction that should have been covered under the insurance policy.**

63. AmGUARD never meaningfully responded to or analyzed AR Rios' May 25, 2022, estimate.

64. Without the covered benefits Sunridge was owed under the policy and without the resources at hand to pay for remaining construction, AmGUARD forced Sunridge to assess unit owners to bridge the gap between AmGUARD's unsupported numbers and the actual costs of construction. In June of 2022, the association members ratified the assessment, approving collection of $515,449.62.

65. With the assessment funds, Sunridge was finally able to move forward with the remaining construction. With the time necessary to collect the assessed funds and the impact of

yet another Vail Valley winter, construction dragged on through the spring and summer of 2023, with the final unit accounted for in July of 2023.

66. The cost of construction materials and labor tends to increase over time.

67. AmGUARD's failures resulted in the final numbers coming in higher than AR Rios' May 2022 estimate, which was based on a June 2022 starting date. The earliest contractors were able to schedule work at the properties thanks to AmGUARD's delays was late September, early October of 2022.

68. On August 30, 2023, Sunridge submitted to AmGUARD the final construction costs from AR Rios with a request for payment of the outstanding covered benefits in the amount of $516,211.62.

69. On September 1, 2023, AmGUARD responded to Sunridge's August 30, 2023 submission and indicated Mr. Jeffords would review the submitted documentation for any revisions to his estimate or will advise as to what additional information he needs to complete his estimate.

**F. AmGUARD forced its insured to file suit in order to recover benefits owed under the policy.**

70. The policy contains a "Legal Action Against Us" clause that requires any lawsuit be brought within two years after the date on which the direct physical loss or damage occurred (the "limitations period").

71. Accordingly, that limitations period was set to expire on April 11, 2023.

72. On March 17, 2023, Sunridge requested in a letter to AmGUARD that it agree to toll the limitations period until September 1, 2023, to provide both AmGUARD and Sunridge time to negotiation resolution of the claim upon completion of construction.

73. On March 23, 2023, AmGUARD responded with a letter and misrepresented that Sunridge had only requested a two-month extension of the limitations period and indicated it would agree to toll the limitations period until June 11, 2023.

74. On March 28, 2023, Sunridge pointed out in a letter to AmGUARD that it misrepresented Sunridge's request and asked that AmGUARD reconsider extending the suit limitations period for two months and instead agree to extend the suit limitations period up to and including Friday, September 1, 2023.

75. On April 10, 2023, having received no response from AmGUARD, Sunridge inquired via email whether AmGUARD intended to respond at all to its insured.

76. Three days later, on April 13, 2023, still having received no response from AmGUARD, Sunridge once again asked whether AmGUARD's insured may expect the courtesy of a response.

77. By May 3, 2023, AmGUARD had not bothered to even acknowledge the above communications beginning on March 23. So, Sunridge sent yet another letter dated pointing out that "Failnig to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" was definitionally an unfair method of competition and unfair or deceptive act or practice in the business of insurance under Colorado law.

78. On May 4, 2023, AmGUARD finally responded via email to the more than a month of ignored communications and indicated it would agree to extend the limitations period

6

until September 1, 2023. That email did not acknowledge that it took AmGUARD more than a month to even acknowledge communications with its insured, let alone apologize for its failures in communicating.

79. On August 25, 2023, Sunridge sent a letter to AmGUARD indicating construction of remaining units took slightly longer than expected and its submission of final costs was forthcoming and requested AmGUARD agree to extend the limitations period Thanks to construction taking longer than expected, Sunridge once again reached out to AmGUARD and on August 25, 2023, to again extend the suit limitations period for an additional 4 weeks, until September 29, 2023, to permit the parties to review and possibly resolve the claim.

80. Despite responding to Sunridge's submission of August 30, 2023, AmGUARD refused to acknowledge Sunridge's August 25, 2023, correspondence.

81. As such, the limitations period ends, and thus Sunridge was forced to file this Complaint, on September 1, 2023.

### IV.   CLAIMS FOR RELIEF

#### First Claim for Relief
#### (Breach of Contract)

82. Plaintiff incorporates herein, as if fully set forth, all allegations set forth elsewhere in this Complaint.

83. The policy constitutes a contract under which AmGUARD agreed to pay, on a replacement cost basis, for, among other things, direct physical loss caused by fire at the covered properties.

84. Two covered buildings under the policy suffered direct physical loss, necessitating substantial repairs as a result of the fire on April 11, 2021.

85. AmGUARD breached the policy by failing to pay and/or failing to agree to pay the full amount owed for the covered loss.

86. AmGUARD breached the policy by failing to properly investigate the loss, instead forcing its insured to essentially adjust its own claim.

87. AmGUARD's breach of the policy has caused Sunridge damages and losses of all sums due under the policies for the loss.

#### Second Claim for Relief
#### (Violation of §§ 10-4-1115 and 1116, C.R.S.)

88. Plaintiff incorporates herein, as if fully set forth, all allegations set forth elsewhere in this Complaint.

89. Under the policy, AmGUARD owes benefits to plaintiff for the repair, actual cash value, and replacement costs of the damage caused by the fire.

90. AmGUARD has unreasonably failed to pay the benefits owed to Sunridge and has unreasonably denied and/or ignored its obligation to pay the benefits owed to Plaintiff, without a reasonable basis.

91. AmGUARD's failure to pay to Sunridge the benefits owed under the Policies violates § 10-4-1115, C.R.S., thereby entitling Sunridge to the remedies included in § 10-4-1116, C.R.S., including two times the covered benefit, costs, and attorney's fees.

### Third Claim for Relief
### (Common Law Bad Faith)

92.　Plaintiff incorporates herein, as if fully set forth, all allegations set forth elsewhere in this Complaint.

93.　AmGUARD owed and continues to owe its policyholder, the Plaintiff, the duty of good faith and fair dealing when investigating, evaluating and paying for the losses suffered as a result of the April 11, 2021, fire.

94.　AmGUARD breached and continues to breach this duty by, among other things, engaging in one of more of the following acts, some of which are considered Unfair Claim Settlement Practices pursuant to C.R.S. §10-3-1104(1)(h):

a. unreasonably failing to pay Plaintiff's claims;

b. unreasonably failing to properly construe the Policies;

c. unreasonably failing to make payments in a reasonable and timely manner;

d. misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue [C.R.S. §10-3-1104(1)(h)(I)];

e. failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the Policies [C.R.S. §10-31104(1)(h)(II)];

f. failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies [C.R.S. §10-31104(1)(h)(III)];

g. refusing to pay claims without conducting a reasonable investigation based upon all available information [C.R.S. §10-3-1104(1)(h)(IV)];

h. not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear [C.R.S. §10-3-1104(1)(h)(VI)];

i. compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds [C.R.S. §10-31104(1)(h)(VII)];

j. failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement [C.R.S. §10-3-1104(1)(h)(XIV)];

k. failing to act reasonably in the adjustment and resolution of Plaintiff's Claim, when AmGUARD was aware or should have been aware of its negligence;

l. failing to comply with reasonable standards in connection with the investigation, resolution and adjustment of Plaintiff's claims;

m. unreasonably denying or failing to affirm coverage for Plaintiff's claims within a reasonable time after investigation;

n. ignoring reasonably available facts, including without limitation, the inapplicability of exclusions to the claims;

o. delaying investigations of discrepancies and claims brought to AmGUARD's attention by Plaintiff and Plaintiff's representatives; and

      p.   relying on a standard that is not found in the Policies to deny Plaintiff's claims.

95. AmGUARD's breach of the duty of good faith and fair dealing was unreasonable and was action taken by AmGUARD either knowing it was unreasonable, or in reckless disregard of the fact its action was unreasonable.

96. AmGUARD's breach of the duty of good faith and fair dealing has caused Plaintiff damages, including loss of funds, delays in making repairs, loss of property value, and other damages.

97. AmGUARD's actions were willful, wanton and in reckless disregard for the rights and feelings of Plaintiff.

WHEREFORE, Plaintiff, Sunridge at Avon II Condominium Association, requests the Court:

a. Enter judgment and award damages against AmGUARD in an amount to be determined at trial to compensate Plaintiff for the damages and losses suffered by it as a result of the fire on April 11, 2021, that were covered or should have been covered by the policy, for AmGUARD's bad faith, and for Plaintiff's other losses and damages in amounts to be determined at trial;

b. Enter judgment and award two times the covered benefits, reasonable attorney fees and costs pursuant to § 10-3-1116, C.R.S. against AmGUARD;

c. Award expert witness fees, other costs, pre- and post-judgment interest at the highest permitted rates, and for such other and further relief as the Court deems proper.

## V.   JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted September 1, 2023.

/s/ Patrick M. Sweet
Patrick M. Sweet, Reg. No. 51130
Burg Simpson Eldredge Hersh & Jardine, P.C.
40 Inverness Drive East
Englewood, CO 80112
Phone: 303-792-5595
Email: psweet@burgsimpson.com
*Attorney for Plaintiff*

Plaintiff's Address:
1050 & 1061 W. Beaver Creek Blvd.
Avon, CO 81620

10